Yongmoon Kim
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Tel. & Fax (201) 273-7117
ykim@kimlf.com
*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LUIS E. CASTILLO-LAZARINI, *on behalf of himself and those similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>ORION PORTFOLIO SERVICES, LLC; ANURAG SETT; DEBT RECOVERY SOLUTIONS, LLC; ELLIOT SCHWARTZ; and JOHN DOES 1 to 10,<br><br>Defendants. | Civil Action No.<br><br><br><br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiff, Luis E. Castillo-Lazarini, individually and on behalf of all other similarly situated, by way of Class Action Complaint against Defendants, Orion Portfolio Services, LLC; Anurag Sett; Debt Recovery Solutions, LLC; Elliot Schwartz (and John Does 1 to 10) states:

### I. NATURE OF THE ACTION

1. Plaintiff brings this action for damages against Defendants arising from Defendants' violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

2. As described more fully below, Defendants violated the FDCPA against Plaintiff and other New Jersey consumers by, *inter alia*, by attempting to collect consumer debts without

a license to do so under the New Jersey Consumer Finance Licensing Act, N.J. Stat. Ann. § 17:11C-3, thereby misrepresenting the amount of the debt and attempting to collect amounts not permitted by law; improperly suggesting that the consumer's debt is subject to interest, late fees, and/or other fees by qualifying the balance of the debt as "Current"; and for sending collection letters with settlement offers, and false representations of savings and discounts on time-barred debts.

## II.   JURISDICTION AND VENUE

3. This Court has jurisdiction to entertain this matter pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

4. Venue in this action properly lies in the District Court of New Jersey, Newark Vicinage, as Defendants regularly do business in this district.

## III.   PARTIES

5. Plaintiff, Luis E. Castillo-Lazarini ("Plaintiff"), is a natural person residing in Essex County, New Jersey.

6. Defendant, Orion Portfolio Services, LLC ("OPS"), is a debt buyer located at 10375 Old Alabama Road Connector, Suite 302, Alpharetta, Georgia, 30022, who purchases defaulted consumer debts for pennies on the dollar.

7. Defendant, Anurag Sett, is a managing member of OPS.

8. Defendant, Debt Recovery Solutions, LLC ("DRS") is a collection agency with its principal place of address located at 6800 Jericho Turnpike, Suite 113E, Syosset, New York 11791.

9. Defendant, Elliot Schwartz, is the managing member of DRS.

10. The Plaintiff is informed and believes, and on that basis alleges, that Defendants John Does 1 to 10 are natural persons and/or business entities all of whom reside or are located within the United States and personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with and oversaw policies and procedures used by the employees of Defendants that are the subject of this Complaint. Those Defendants personally control the illegal acts, policies, and practices utilized by Defendants and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint.

11. In this pleading, "Defendants" in the plural refers to all Defendants.

### IV.   FACTS

A. **Corporate Background and Business Model**

12. Defendants are not in the business of extending credit, selling goods or services to consumers.

13. Defendants regularly collect or attempt to collect past-due or defaulted debts allegedly owed to others which were incurred primarily for personal, family or household purposes.

14. Defendants are in the business of collecting past-due or defaulted debts or alleged debts of natural persons.

15. Defendants use the mails, telephone, the internet and other instruments of interstate commerce in engaging in the business of collecting past-due or defaulted debts or alleged debts of natural persons which arise from transactions which are primarily for personal, family, or household purposes.

## B. The Verizon Account

16. Defendants have asserted that Plaintiff incurred or owed a certain financial obligation arising from Verizon ("Debt" or "Account").

17. The Debt is alleged to arise from one or more transactions which were primarily for Plaintiff's personal, family, or household purposes.

18. Defendants contend that the Account is past-due and in default.

19. The Account was past-due and in default when it was purchased by Defendants for pennies on the dollar.

20. Upon information and belief, the last payment made on the Account was in June or July 2012.

21. Due to unforeseen financial circumstances, Plaintiff defaulted on the Account sometime in July 2012.

22. Upon default, a cause of action to enforce the Debt accrued.

23. Defendants later allegedly purchased a pool of defaulted consumer accounts, including Plaintiff's Account, for pennies on the dollar.

24. In an attempt to collect the Debt and on behalf of OPS, DRS mailed a collection letter to Plaintiff on October 26, 2018, and December 4, 2018 ("DRS Letters").

25. A true copy of the DRS Letters, but with redactions, is attached as ***Exhibit A***.

26. On information and belief, the DRS Letters are mass-produced, computer-generated, form letters that are prepared by the Defendants and mailed to consumers in the State of New Jersey, such as Plaintiff, from whom they are attempting to collect a debt.

27. Plaintiff received and reviewed the DRS Letters.

### C. Unlawful Collection

28. After allegedly purchasing the past-due and defaulted Account for pennies on the dollar, OPS, either directly or through intermediate transactions, assigned, placed, or transferred the Account with DRS for collection.

29. The Account was assigned to DRS to collect the Debt.

30. The Account was past-due and in default when it was placed with or assigned to DRS for collection.

31. At all times relevant hereto, DRS acted on behalf of OPS in an attempt to collect the Debt.

32. At all times relevant hereto, the acts and omissions of DRS were incidental to or taken within the scope of the responsibilities given and authorized by OPS.

33. OPS is not licensed by the New Jersey Department of Banking and Insurance under the New Jersey Consumer Finance Licensing Act ("NJCFLA") or any other State consumer lending statute.

34. During all times relevant to this action, OPS was not licensed as a "sales finance company" or a "consumer lender" pursuant to the NJCFLA.

35. "Any person directly or indirectly engaging . . . in the business of buying, discounting or endorsing notes, or of furnishing, or procuring guarantee or security for compensation in amounts of $50,000 or less, shall be deemed to be engaging in the consumer loan business."

36. By purchasing and taking assignment of the accounts, OPS acted as a "sales finance company" as defined at N.J. Stat. Ann. § 17:16C-1(f).

37. "No person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act."

38. OPS is not permitted to engage in the "consumer loan business" or as a "sales finance company" since they did not first obtain a license pursuant to the NJCFLA.

39. Accordingly, "attempt[s] to collect Plaintiff's alleged debt on behalf of Defendants, who were not licensed as a consumer lender under the NJCFLA, constitutes prohibited conduct under the NJCFLA."

   D. **False Threat of Interest**

40. Furthermore, the DRS Letter states "Current Balance: **$155.38**[.]"

41. It is Plaintiff's understanding and belief that, under the terms and conditions applicable to their use of the Account, interest, late charges, and other charges and fees (such as annual or monthly fees) could accrue.

42. The least sophisticated consumer would reasonably presume and understand that a an account such as a Verizon account would, if not paid in full every month, accrues interest and may accrue late charges and other charges and fees. Thus, the least sophisticated consumer would believe the truth of (a) the statement in Defendants' collection letters that the stated balance was merely the "Current Balance" as of the date of the respective collection letter, and (b) the implication that the amount due could or would increase if not promptly paid.

43. In fact, however, the balance of the Account could not increase and, even if it could increase, Defendants never intended to add, would not add, and did not add any lawful interest, late charges, or other fees and charges to increase the balance stated in Defendants' collection letters.

44. Although Defendants' collection letters qualification of the amount due as "Current Balance" was literally true, such qualification was not a fact necessary to accurately disclose the amount of the Debt. The collection letters would have accurately stated the amount of the debt by stating "The amount due is $ [the exact amount due]." or "The amount of the debt is $ [the exact amount due]." By qualifying the amount due was the "Current Balance", however, Defendants failed to accurately state the amount of the Debt, and falsely, deceptively, and misleadingly represented to the least sophisticated consumer that the amount owed to the creditor would or could increase over time—indeed, that the amount owed had already changed by the time the collection letter was received days later.

45. Defendants' collection letters effect of leading a consumer to conclude that the amount due is not static but, instead, could increase, materially affects the decision of the least sophisticated consumer whether to pay the debt because, with limited resources and the inability to pay all debts, such a consumer would rationally pay a debt with a balance that was increasing due to interest before paying an otherwise identical debt with a static balance.

46. On information and belief, the collection letters attached as Exhibit A are mass-produced, computer-generated form letters—that is, it was created by merging electronically-stored information about the debts with an electronically-stored template—that is mailed to consumers in the State of New Jersey, such as Plaintiff, from whom Defendants were attempting to collect a debt.

E. **Time-Barred Debt**

47. When Defendants sent the DRS Letters, the statute of limitations had run on the Account.

48. The October 26th letter makes a settlement offer and also invites Mr. Castillo-Lazarini to take advantage of a "SALE".

49. The October 26th letter states "**SALE**" and "**DON'T MISS THIS OPPORTUNITY**" in large capitalized letters.

50. DRS further states "**[y]ou know how a SALE works…they don't last forever. Take advantage of this great deal NOW.**"

51. The October 26th letter continues to state that if Mr. Castillo-Lazarini "**[p]ay[s] $100.99 by 11/11/2018**", "**this account will be SETTLED and CLOSED.**"

52. The December 4th letter states "Discount Offer: $77.69" and "50% OFF".

53. Defendants regularly send collection letters offering to settle debts and misrepresenting savings on debts on which the statute of limitations has expired.

54. The Federal Trade Commission has found that "[m]ost consumers do not know their legal rights with respect to collection of old debts past the statute of limitations . . . . When a collector tells a consumer that she owes money and demands payment, it may create the misleading impression that the collector can sue the consumer in court to collect that debt." The FTC entered into a consent decree with Asset Acceptance, LLC, one of the largest debt buyers in the United States, requiring that it disclose to consumers when it is attempting to collect debts that are barred by the statute of limitations.[1]

55. On October 1, 2012, the Consumer Financial Protection Bureau, which has taken over much of the FTC's enforcement responsibility and has been granted rule-making authority

---

[1] Press Release, Federal Trade Commission, Under FTC Settlement, Debt Buyer Agrees to Pay $2.5 Million for Alleged Consumer Deception (Jan. 30, 2012), http://www.ftc.gov/news-events/press-releases/2012/01/under-ftc-settlement-debt-buyer-agrees-pay-25-million-alleged (For the Consent Decree wherein Asset Acceptance promises to stop filing time-barred suits, see http://www.ftc.gov/enforcement/cases-proceedings/052-3133/asset-acceptance-llc).

with respect to debt collection, the Federal Deposit Insurance Corporation, the Federal Reserve Board, and the Office of the Comptroller of the Currency entered into consent orders with three American Express-related entities requiring disclosure that debts they attempt to collect were time-barred. 2012-CFPB-0002; 2012-CFPB-0003; 2012-CFPB-0004. The orders require that "the Bank shall continue to provide disclosures concerning the expiration of the Bank's litigation rights when collecting debt that is barred by the applicable state statutes of limitations . . ." (2012-CFPB-0002, p. 6 of 35, 2012-CFPB-0003, p. 5 of 28).

56. The October 1, 2012 orders further require disclosure of "all material conditions, benefits and restrictions concerning any offer of settlement. . . ." (2012-CFPB-0002, p. 7 of 35, 2012-CFPB-0003, p. 6 of 28). Thus, they recognize that collection letters that fail to disclose material information may be misleading.

57. On January 30, 2013, the FTC issued its report, The Structure and Practices of the Debt Buying Industry, available at http://www.ftc.gov/os/2013/01/debtbuyingreport.pdf. The report reaffirms its position in the United States of America v. Asset Acceptance, LLC, No. 8:12-cv-182-T-27EAJ (M.D. Fla. 2012), American Express Centurion Bank (FDIC-12-315b, FDIC-12-316k, 2012-CFPB-0002), American Express Bank, FSB (2012-CFPB-0003) and American Express Travel Company, Inc. (2012-CFPB-0004) cases, that a defendant may violate the FDCPA by sending a collection letter demanding payment of a time barred debt without disclosing that the debt was time barred.

58. The report cites to a study (Timothy E. Goldsmith & Natalie Martin, Testing Materiality Under the Unfair Practices Acts: What Information Matters When Collecting Time-Barred Debts?, 64 Consumer Fin. L.Q. Rep. 372 (2010)) that establishes the disclosure that a debt is time barred in a debt collection letter is material to the consumer.

59. "[A]n unsophisticated consumer could be misled by a dunning letter for a time-barred debt, especially a letter that uses the term 'settle' or 'settlement.'"[2]

60. Nothing in the DRS Letters disclosed that the Debt was barred by the statute of limitations.

61. Nothing in the DRS Letters disclosed the date of the transactions giving rise to the Debt.

62. Nothing in the DRS Letters disclosed the date of default.

63. Nothing in the DRS Letters disclosed that the Debt is legally unenforceable in a court of law.

64. The DRS Letters falsely imply that the Account is legally enforceable.

65. Plaintiff believed, as would the least sophisticated consumer would understand, that Defendants would later sue to collect on the debt.

66. Nothing in the DRS Letters disclosed the legal consequences of a settlement or a payment.

---

[2] *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1022 (7th Cir. 2014); *see also Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 429 (3d Cir. 2018) ("in the specific context of a debt-collection letter, the least-sophisticated debtor could be misled into thinking that 'settlement of the debt' referred to the creditor's ability to enforce the debt in court rather than a mere invitation to settle the account."); *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 513 (5th Cir. 2016) ("a collection letter seeking payment on a time-barred debt (without disclosing its unenforceability) but offering a 'settlement' and inviting partial payment (without disclosing the possible pitfalls) could constitute a violation of the FDCPA."); *Buchanan v. Northland Group*, 776 F.3d 393, 399 (6th Cir. 2015) ("a 'settlement offer' with respect to a time-barred debt may falsely imply that payment could be compelled through litigation."); *Filgueiras v. Portfolio Recovery Assocs., LLC*, No. 15-8144 (JLL) (SCM), 2016 U.S. Dist. LEXIS 54672, at *23 (D.N.J. Apr. 25, 2016) ("When a debt collector offers to 'settle' a time-barred debt, it is plausible that the legal status of the debt has been misrepresented since it is plausible that an unsophisticated consumer would believe a letter that offers to 'settle' a debt implies that the debt is legally enforceable." (internal quotations marks and citations omitted)).

67. Nothing in the DRS Letters disclosed that a settlement would restart the statute of limitations.

68. The DRS Letters fail to disclose that choosing to accept any of Defendants' offers could reset or restart the applicable statute of limitations or create a new enforceable settlement or contract.

69. The DRS Letters fail to disclose that, should the applicable statute of limitations reset or begin again, Defendants or a subsequent assignee may have the right commence legal action, which otherwise would have been barred.

70. Defendants fail to clearly inform Plaintiff, and the least sophisticated consumer, that the applicable statute of limitations has expired and therefore any potential legal liability related to the time-barred debt has also already expired.

71. Thus, Defendants' representations of "offers", "sale", "discount", and "50% off" are false as the debt is unenforceable in a court of law. Such savings do not exist as Plaintiff would have a complete statute of limitations defense to the Debt.

72. Contrary to Defendants' misrepresentations, Plaintiff would never miss an "opportunity" of missing a sale because this Debt is legally unenforceable in court.

### V.   POLICIES AND PRACTICES COMPLAINED OF

73. It is Defendants' policy and practice to send collection letters in an attempt to collect consumer debts without the license to do so under the NJCFLA.

74. It is Defendants' policy and practice to send collection letters that misrepresent that the balance of the debt could increase.

75. It is Defendants' policy and practice to send collection letters in an attempt to collect time-barred consumer debts that misrepresent the legal status of the debt, that threaten

suit, that do not disclose the debt was barred by the statute of limitations and that do not disclose the legal consequences of a payment or settlement.

76. Such practice is a deceptive collection ploy used to coerce and entice a least sophisticated consumer into making payments on an otherwise unenforceable debt or enter into a new agreement that would restart the statute of limitations.

77. Such practice is a deceptive collection ploy used to entice a least sophisticated consumer with "savings" in order to have the least sophisticated consumer make a payment or enter into a new agreement that would restart the statute of limitations, when in fact such savings are nonexistent and false.

78. Defendants engaged in unfair and deceptive acts and practices, in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f, 1692f(1), and 1692g.

## VI. CLASS ACTION ALLEGATIONS

79. Plaintiff brings this action individually and as a class action on behalf of all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

80. Subject to discovery and further investigation which may cause Plaintiff to expand, restrict or modify the following class definition at the time Plaintiff moves for class certification, Plaintiff seeks certification of a Class initially defined as follows:

> **Class**: All natural persons with addresses within the State of New Jersey, to whom, from October 26, 2018 through the final resolution of this case, Defendants, sent one or more letters in the form of Exhibit A to this complaint, in an attempt to collect a consumer debt on behalf of Orion Portfolio Services, LLC.
>
> **Subclass**: All members of the Class whose debt was barred by the applicable statute of limitations on the date of the letter.

81. Plaintiff seeks to recover statutory damages, actual damages, attorney's fees and costs on behalf of all class members under the Fair Debt Collection Practices Act.

82. The class for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

83. There are questions of law and fact common to the members of the class and subclass that predominate over questions affecting only individuals, including but not limited to:

   a. Whether Defendants are debt collectors under the FDCPA;

   b. Whether Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f, 1692f(1), and 1692g;

   c. Whether Plaintiff, the class, and subclass are entitled to statutory damages;

   d. Whether Plaintiff, the class, and subclass are entitled to actual damages, including all amounts paid on time-barred debts.

84. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. The FDCPA statutory scheme provides for statutory damages payable to each class member. A class action will cause an orderly and expeditious administration of the claims of the class and the subclass and will foster economies of time, effort and expense.

85. Plaintiff's claims are typical of the claims of the members of the class and subclass.

86. The questions of law and/or fact common to the members of the class and subclass predominate over any questions affecting only individual members.

87. Plaintiff does not have interests antagonistic to those of the class and subclass.

88. The class and subclass, of which Plaintiff is a member, are readily identifiable.

89. Plaintiff will fairly and adequately protect the interests of the class and subclass, and has retained competent counsel experienced in the prosecution of consumer litigation. Proposed Class Counsel have investigated and identified potential claims in the action; have a

great deal of experience in handling consumer class actions and other complex litigation, and claims of the type asserted in this action.

90. The prosecution of separate actions by individual members of the class would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendants in this action or the prosecution of separate actions by individual members of the class and subclass would create the risk that adjudications with respect to individual members of the class and subclass would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Prosecution as a class action will eliminate the possibility of repetitious litigation.

91. Plaintiff does not anticipate any difficulty in the management of this litigation.

### VII. FIRST COUNT: VIOLATIONS OF THE FDCPA

92. Plaintiff, on behalf of himself and others similarly situated, reasserts and incorporates herein the allegations contained in the preceding and following paragraphs.

93. Plaintiff and those similarly situated are "consumers" as defined by 15 U.S.C. § 1692a(3) because they are natural persons allegedly obligated to pay a debt, in which the money, property, insurance, or services, which was the subject of the transaction, was primarily for personal, family and/or household purposes.

94. The debts alleged to be owed by the Plaintiff and those similarly situated are consumer "debts" as defined by 15 U.S.C. § 1692a(5).

95. Defendants are "debt collectors" as defined by 15 U.S.C. § 1692a(6) and the interpretations thereof.

96. The DRS Letters and the same or similar letters sent to numerous New Jersey consumers are "communications" as defined by 15 U.S.C. § 1692a(2).

97. By sending the above-described collection letters, Defendants violated sections 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f, 1692f(1), and 1692g of the FDCPA.

98. The violations of the FDCPA described herein constitute *per se* violations.

99. Based on any one or more of those violations, Defendants are liable to Plaintiff and those similarly situated for damages, attorney's fees and costs under 15 U.S.C. § 1692k.

## VIII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Luis E. Castillo-Lazarini, on behalf of himself and others similarly situated, demands judgment against Defendants, Orion Portfolio Services, LLC; Anurag Sett; Debt Recovery Solutions, LLC; and Elliot Schwartz as follows:

A. For certification of this instant matter as a class action, appointing the named Plaintiff as representative of the class, and appointing the attorneys of Kim Law Firm LLC as class counsel;

B. For statutory damages in favor of Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i) or, in the alternative, 15 U.S.C. § 1692k(a)(2)(A);

C. For statutory damages in favor of the Class and Subclass pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

D. For actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

E. For attorney's fees, litigation expenses and costs in connection with this action pursuant to 15 U.S.C. § 1692k(a)(3);

F. For pre-judgment and post-judgment interest; and

G. For such other and further relief as the Court deems equitable and just.

## IX. JURY DEMAND

Plaintiff demands trial by jury as to all claims and defenses.

## X. CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

KIM LAW FIRM LLC

*s/Yongmoon Kim*
Yongmoon Kim
*Attorneys for Plaintiff and the Proposed Class*

Dated: October 28, 2019